IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JENNIFER L. KENNY**,

          Plaintiff,

       v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

          Defendant.

_____

**Civ. No. 6:15-cv-00310-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

     Plaintiff Jennifer Kenny (formerly Jennifer Graves) filed this action for judicial review of

a final decision of the Commissioner of Social Security denying her application for Disability

Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title

XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and

1383(c)(3). For the reasons stated below, the Commissioner's decision is **REVERSED** and this

matter is remanded for payment of benefits.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012), (quoting *Sandgathe v. Chafer*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## PROCEDURAL AND FACTUAL BACKGROUND

Kenny filed her applications for both Disability Insurance Benefits and Supplemental Security Income alleging disability beginning October 20, 2009 on December 21, 2011. Tr. 165-77. Her applications were denied initially and on reconsideration. Tr. 117-26; 130-6. After a hearing, the administrative law judge (ALJ) determined plaintiff is not disabled on November 6, 2013. Tr. 8-26. The Appeals Council denied her request for review on December 22, 2014. Tr. 1-4; 11-21. Thus, the ALJ's decision became the final decision.

Kenny was born on November 26, 1983. She graduated from high school, earned her Associates Degree in 2009, and finished some course work (mostly online) for a legal-assistant certificate. Tr. 15, 20, 42-45, 343, 505. Kenny served in the US Army, where she worked as a Morse Code Interceptor, between July 2, 2002 and December 30, 2004, when she was given a

2 – OPINION AND ORDER

medical discharge for chronic pain. Tr. 48, 505, 614, 804. Kenny preformed prior work as a bank teller through a temporary agency and Key Bank from January 2005 to October 20, 2009. Tr. 20, 50, 99. She also worked for five months as a part-time (fifteen hours per week) intern at a law firm. Tr. 35-37; 44; 704; 726; 729.

       Kenny has been diagnosed with recurrent Major Depressive Disorder ("MDD"), Post-Traumatic Stress Disorder ("PTSD"), Obsessive-Compulsive Disorder ("OCD"), Bipolar Disorder, acute anxiety, a narcotics addiction, and Scoliosis. Tr. 14; 38; 572; 705. Kenny claims that this combination of diagnoses and conditions have caused her to suffer from frequent and prolonged panic attacks, depression, antisocial behavior, nightmares and problems sleeping, memory and concentration problems, compulsive behavior including some drug use, and multiple suicide attempts. Tr. 37-43; 288; 420; 461; 508-511; 553-562; 631-635; 714-719; 725; 732; 748; 778. Kenny has been hospitalized four times for impulsive suicide attempts and she continues to present suicidal ideation. Tr. 16-17; 286-340-377; 508; 511; 562.

## DISCUSSION

       The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

3 – OPINION AND ORDER

At step one, the ALJ found that Kenny had not engaged in substantial gainful activity since the alleged onset date of disability, October 20, 2009. Tr. 13. At step two, the ALJ found that Kenny's depression and anxiety/PTSD were severe impairments. Tr. 14. At step three, the ALJ found that Kenny did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the per se disabling impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, and that she had the residual functional capacity to perform a full range of work at exertional levels, but with the following nonexertional limitations: Plaintiff is limited to no more than occasional interaction with co-workers and the general public. Tr. 14-16. The ALJ also found that some of Kenny's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 16-18. At step four, the ALJ found that Kenny was unable to perform her past relevant work. Tr. 20. At step five, the ALJ found that considering Kenny's age, education, work experience, and residual functional capacity, there were representative jobs that existed in significant numbers in the national economy she could perform, such as: basket filler, electrical accessories assembler, and electronics worker. Tr. 21.

The issues before this Court are whether the Administrative Law Judge (ALJ) erred in: (1) rejecting some of Plaintiff's subjective symptom testimony based on the ALJ's assessment of Plaintiff's credibility; (2) evaluating medical evidence including the Plaintiff's Global Assessment Functioning (GAF) scores (3) failing to give proper weight to the opinion of one of the Plaintiff's treating doctors (Dr. Banks); and (4) determining Plaintiff's residual functional capacity (RFC).

4 – OPINION AND ORDER

## I. Plaintiff's Credibility

Plaintiff contends that the ALJ improperly rejected some of Kenny's subjective symptom testimony and failed to give "clear and convincing" reasons for doing so. ECF No. 12 at pp. 5-14 and ECF No. 16 at pp. 3-6. In response, Defendant argues that the ALJ's findings are supported by substantial evidence in the record, including objective medical evidence and Plaintiff's own testimony. ECF No. 15 at pp. 3-8.

An ALJ must consider a claimant's subjective symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this] testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[1] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

---

[1] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

As an initial matter, Defendant's brief seems to suggest that this Court should not hold the ALJ to the "clear and convincing" standard regarding credibility assessments; instead using only a "substantial evidence" standard, which does "not require that an ALJ's reasons be especially compelling or convincing." ECF No. 15 at p. 4.

It is true that the ALJ's credibility finding deserves "great deference" because the ALJ is solely responsible for resolving conflicts in the evidence. This includes determining whether Plaintiff's allegations are credible. *Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986). And it is also true that an ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). As discussed above (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)), "clear and convincing" is indeed the standard for rejecting a claimant's testimony. The Ninth Circuit has re-affirmed this in multiple cases, including *Garrison v. Colvin*, 759 F.3d 995, 1021-2, n. 18 (9th Cir. 2014), stating that, "The government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected." *Id.* This Court is not going to depart from precedent and finds that "clear and convincing" is the proper standard.

The ALJ found some of Kenny's statements not credible because, according to the ALJ, although Kenny's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 16-18. In making this determination, the ALJ relied on three things: (1) Inconsistencies between Kenny's medical record and her statements alleging disability; (2) Kenny's past drug seeking behavior;

(3) Kenny's allegations of disabling impairments being "highly suggestive of secondary gain" because she worked in the past. ECF No. 15 at pp. 3-8.

In regard to the inconsistencies between Kenny's medical record and her statements alleging disability, the Commissioner argues that some of Kenny's complaints were not consistent with the medical evidence. The Commissioner cites Kenny's medical chart notes that showed "improvement" after treatment for each suicide attempt, and that in September 2009 her medical notes showed that her mood had "stabilized." ECF No. 15 at pp. 9-10, Tr. 503, 549, 704-5. The Commissioner ignored however, other medical evidence in Kenny's charts that contradicts this, some even within the very same chart-notes cited by the Commissioner in their brief. For example, on March 7, 2011, Kenny saw Dr. Alfredo Velez because she was once again feeling depressed and suicidal. Dr. Velez's notes that Kenny "took 2 separate overdoses," had "obsessive thoughts," and reported "frequent episodes of cutting, the last being this last weekend." Tr. 504. This is far from an "improved" or "stabilized" condition. Less than a year later on January 12, 2012, Kenny was diagnosed with PTSD, with a score of 4 out of 4, on the testing scale. Tr. 17, 548-9.

The Ninth Circuit warned in *Garrison v. Colvin*, 759 F.3d 99t, 1017 (9th Cir. 2014), that reports of improvement in a claimant's condition must be interpreted with an understanding of her overall well-being and the nature of her symptoms. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*

7 – OPINION AND ORDER

The fact that Kenny may have been feeling better from time to time or "improved" after being hospitalized for suicide attempts does not contradict her testimony and certainly does not rise to the level of clear and convincing evidence that her testimony was not credible. It is rudimentary that after someone attempts suicide and is hospitalized for it, their condition could only "improve," as any alternative would be rather grim. Rather, these were simply isolated instances within the cycle of her symptoms and consistent with her diagnoses, that as Kenny put it, "is like a roller coaster." Tr. 41, 420, 461, 508, 536-7, 553, 561, 626, 631-2, 635-6, 706-719, 732-736, 748, 781-2.

The ALJ also questioned Kenny's credibility because of her past "drug seeking behavior." Tr. 17; ECF No. 15 at p. 6. Specifically, the ALJ pointed to an incident wherein Kenny requested narcotics from the ER (but was denied), and another incident wherein Kenny admitted to overusing medication for her mental health impairments. ECF No. 15 at 6; Tr. 266-7.

Frankly, neither of these incidents would have been known to the ALJ had it not been for Kenny's own admissions. Kenny has consistently admitted to her past narcotics addiction (it is also worth noting that Kenny started abusing her medications after her little brother committed suicide in 2007 (Tr. 266-67)), she has sought and received treatment, and with the exception of one relapse on September 17, 2012, had been in remission for almost two years by the time of October 2013 hearing in front of the ALJ. Tr. 33, 266-667, 705, 778. She continues to be active in AA and NA programs. *Id.* Since Kenny has never tried to hide her past sporadic drug use (which the ALJ determined was not "severe" (Tr. 14-5, 778)), it is hard to see how her own admissions should be used against her to bolster a theory that her testimony (during her sobriety) was not credible. I find the record insufficient to discount Kenny's testimony based on her past drug use.

8 – OPINION AND ORDER

The Commissioner's final argument centers on the ALJ's determination that Kenny's allegations of disabling impairments were "highly suggestive of secondary gain." This determination, the commissioner argues, rises to the level of clear and convincing evidence of Kenny's possible untruthfulness because she had worked in the past and has had aspirations to work again in the future. Specifically, the ALJ cited Kenny's past work as a bank teller from 2006-2009, a five month unpaid part-time internship at a law firm in 2013, and her desire to attend law school in the future. ECF No. 15 at pp. 6-8.

In regards to her previous work as a bank teller, the ALJ already determined that Kenny was *una*ble to perform this past work. Tr. 20-21. It is curious that the Commissioner would now try to use this as an example of evidence that Kenny would be capable of similar work in the future, even under a "secondary gain" theory. Regardless, as the Plaintiff's brief points out, Kenny lost this job because of "excessive absences," as a result of the "medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms," that the ALJ had already determined Kenny had met the burden of showing. ECF No. 12 at p. 5; Tr. 16, 33.

In regards to the part-time internship (through her studies at Lane Community College), the ALJ already determined that this activity did *not* rise "to the level of substantial gainful activity." Tr. 13. Therefore the internship cannot be used as evidence of the claimant's ability to successfully maintain a "substantial gainful activity." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). It is also worth noting that even during this fifteen hour a week internship, Kenny was "late quite a bit and called out sick several times" (Tr. 35-37), a fact which only bolsters Kenny's claims, rather than being a clear and convincing reason for rejecting it.

Finally, Kenny's aspiration to attend law school is nothing more than an aspiration and cannot be used as evidence of actual ability. Now in her thirties, Kenny has yet to complete a 4 year college degree or take her LSAT's. Should she one day fulfill this aspiration, graduate from law school, and get hired as a lawyer, she would obviously be required to cease receiving full disability benefits. In the meantime, I agree with plaintiff's counsel when they state that Kenny's aspirations and attempts to reenter the workplace should be applauded, not used against her. ECF No. 12 at p. 12.

None of the "work activity" cited by the Commissioner is inconsistent with Kenny's testimony that because of her conditions she would be absent more than one or two days per month from employment, have difficulty concentrating, fall asleep at work, etc. Tr. 33-38, 42-43. Therefore, I find that because the ALJ failed to give clear and convincing reasons for rejecting Kenny's subjective symptom testimony, it should be credited as true. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).


**II. Plaintiff's Global Assessment Functioning (GAF) Scores**

VA mental-health providers and multiple other hospitals assessed Kenny's Global Assessment of Functioning ("GAF") scores 24 times between December 2011 and October 2013. Tr. 532-570, 583-659, 663-787. During that nearly two year period, Kenny received GAF scores of between 41 and 50, with one exception - a score of 55 when she was discharged from Sacred Heart Hospital in Springfield after one of her suicide attempts on March 9, 2011. Tr. 18, 502. GAF scores between 41 and 50 describe "serious" symptoms such as suicidal ideation and severe obsessive rituals, including impairments in social and occupational functioning. This is consistent with Kenny's claims. *Id*; ECF No. 12 at p. 16.

10 – OPINION AND ORDER

The only reason cited by the ALJ for rejecting the vast majority of the GAF's was because "the factors used to arrive at GAF scores are not always mutually exclusive with disability." Tr. 18. However, the ALJ did not identify any specific factors that were or were not mutually exclusive with disability, nor did he explain what evidence contradicts the findings and how that evidence undermines the probativeness of the GAF assessments.

Without such an explanation, the ALJ's decision is not supported by substantial evidence because he failed to provide specific and germane reasons in the record for rejecting the GAF assessments as required. *See Molina v. Astrue*, 674 F.3d 1104, 1111-2 (9th Cir. 2012). Therefore, I find that the ALJ failed to give proper weight and consideration to Kenny's GAF scores, which were consistent with her alleged symptoms and impairments.

### III. Dr. Banks' Opinion

It is well established that "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F .3d 1211, 1216 (9th Cir. 2005) (citing Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir.1995)). It is equally well established that an ALJ may reject a claimant's testimony regarding the severity of their symptoms based on the claimant's failure to seek medical attention or failure to follow a doctor's recommended treatment plan. *See Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996); SSR 96-7.

The Commissioner argues that the opinions of Kenny's treating psychologist, Dr. Roberta Banks', were only entitled to "some weight" (even though the ALJ found that Banks' assessment was consistent with the record), solely because Kenny "stopped treatment, without explanation." ECF No. 15 at p. 9.

11 – OPINION AND ORDER

However, the record is clear that Kenny did not stop or refuse treatment. She simply moved in 2009 from Washington State to Oregon where she *continued* her treatment with the VA and Peace Health Medical Group for the same psychological issues for which Dr. Banks had been treating her for in Washington. Tr. 20, 50, 99, 417-46, 501-572, 583-659, 663-787. While it may have been thoughtless or unkind that Kenny did not notify Dr. Banks that she was moving out of state after losing her job and health insurance, it is certainly does not constitute "stopping" or "refusing" treatment, especially since she continued her treatment in Oregon. *Id.*

Since Kenny had reasonable and valid explanations for stopping her treatment with Dr. Banks, I find that the ALJ failed to give proper weight and credit to the opinions of Dr. Banks, Kenny's treating psychologist.

## IV. Plaintiff's RFC

The Commissioner argues that the ALJ's residual functional capacity (RFC) finding was complete and properly accounted for all of Kenny's limitations *that the ALJ found credible* and was supported by the medical evidence. ECF No. 15 at pp. 11-12. The Plaintiff argues that the ALJ's analysis of the medical and testimonial record was in error, causing the RFC assessment to be incomplete because it did not account for and include all of Kenny's alleged impairments. ECF No. 12 at pp. 19-20.

At the Hearing, the Vocational Expert ("VE") testified that a typical employer would terminate an employee if she had unexcused absences "any more than one day per month." Tr. 52-53. He further testified that an employer would not permit an employee to be off task "any more than five percent." *Id.* The VE also stated that if an individual were late for work six times per month, it would interfere with her ability to perform the jobs he described. *Id.*

12 – OPINION AND ORDER

This court has already found that the ALJ failed to give clear and convincing reasons for rejecting Kenny's testimony, her GAF scores, and the opinions of her treating psychologist, Dr. Banks. Had these opinions and testimony been credited and considered in the RFC, the result would have been a finding of disabled. There would be no viable eight-hour day alternate jobs Kenny would be capable of doing because she would have been unable to fulfill the job functions and requirements stated by the VE at the Hearing. Therefore, I find that the ALJ's RFC of Kenny was in error because it did not consider all of her limitations and impairments established in the record.

## Remand for Calculation and Payment of Benefits is Appropriate

The Court applies a three-part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits. *Garrison*, 759 F.3d at 1020 (9th Cir. 2014); *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1099 (9th Cir. 2014). The Court is able to grant an immediate award of benefits when the following three conditions are met:

(1) the record has been fully developed and further administrative proceedings would serve no useful purpose,
(2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
(3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.*

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose. The ALJ has already addressed all of the evidence, but failed to provide legally sufficient reasons for rejecting Kenny's testimony, her GAF scores, and the opinions of her treating psychologist. If the improperly discredited evidence had been credited as true, the ALJ would have been required to find Kenny disabled. Therefore, remand for the immediate calculation and payment of benefits is appropriate.

13 – OPINION AND ORDER

## **CONCLUSION**

For these reasons, the Commissioner's decision is not supported by substantial evidence.

The decision of the Commissioner is REVERSED and this matter is REMANDED to the

Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g), for the immediate calculation and

payment of benefits.

IT IS SO ORDERED.

DATED this 27th day of June, 2016.


**Michael J. McShane**
**United States District Judge**

14 – OPINION AND ORDER